IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK BULLARD,  :
:
    Petitioner  :
:  CIVIL NO. 1:10-CV-2528
:
    v.  :  Hon. John E. Jones III
:
:
WARDEN WILLIAM SCISM,  :
:
    Respondent  :

## **MEMORANDUM**

May 18, 2011

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On December 13, 2010, Petitioner Derrick Bullard ("Petitioner" or "Bullard"), an inmate presently confined at the Low Security Correctional Institution -Allenwood ("LSCI Allenwood") in White Deer, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241.  (Doc. 1.)

Bullard alleges that his "protected liberty interest was violated" by the Unit Disciplinary Committee ("UDC") and Discipline Hearing Officer ("DHO") at the Metropolitan Detention Center Brooklyn ("MDC Brooklyn") "when good time credits were taken under invalid procedural due process when the UDC and DHO created fiat

policy." (*Id.* at 6.) He inquires "[w]hether the DHO and UDC substantially complied with regulations of inmate discipline?" and also asks whether Federal Bureau of Prisons ("BOP") regulations are valid or whether the UDC and DHO can create "fiat policy" as the process moves along. (*Id.*) Bullard requests that the administrative remedy process be "excused or judicially waived" because he claims that he is not challenging the application of the BOP regulations, but instead only challenges their validity. (*Id.* at 7.) He also claims that the MDC Brooklyn staff interfered with his ability to utilize the administrative remedy process. (*Id.*)

By Order dated January 5, 2011, service of the Petition was directed, and Respondent was directed to answer the allegations in the Petition within twenty-one (21) days. (Doc. 4.) On January 25, 2011, Respondent filed a Response (Doc. 5) to the Petition along with supporting exhibits (Doc. 5-1).[1] Bullard filed a Reply on February 8, 2011. (Doc. 6.) Thus, the Petition is fully briefed and ripe for review. For the reasons set forth below, the Petition will be denied.

## I. FACTUAL BACKGROUND

Bullard presently is serving a 240 month term of imprisonment that was

---

[1] Respondent submitted the Declaration of Michael S. Romano, an Attorney Advisor employed by the BOP at USP Lewisburg (Doc. 5-1 at 3-5), in which he refers to the following attachments: a copy of Petitioner's Public Information Inmate Data as of 1/7/11 (*id.* at 7-9); a copy of Petitioner's Administrative Remedy Generalized Retrieval (*id.* at 11-13); and a copy of the DHO Packet for Petitioner's 8/31/10 DHO hearing (*id.* at 15-25).

imposed on March 5, 2004 by the United States District Court for the Eastern District of Pennsylvania for conspiracy to distribute cocaine base. (Doc. 5-1, Romano Decl., ¶ 2.) His projected release date is January 27, 2019 via good conduct time release. (*Id.*)

On July 27, 2010, Bullard received an incident report charging him with making sexual proposals or threats to another in violation of Code 206. (*Id.* at 5 ¶ 6; Doc. 6, Reply, Ex. 1 (A1), at 9, 7/27/10 Incident Report.) The description of the incident in the July 27 incident report states that, based on a review of the NICE Camera System and Bullard's self-admission, it was determined that he wrote a love letter to a staff member indicating that she should be complimented everyday. (*See* Doc. 6 at 9 ¶ 11.) The description further stated, "Specifically, you were observed on the NICE camera system walking to the officer's station and slipped a letter under the door with the words, 'Read carefully.'" (*See id.*)

The incident report was delivered to Bullard on July 27 at 5:15 p.m. (*See id.* ¶¶ 15, 16.) A UDC hearing was held on July 28, 2010, after which the UDC determined that a referral to the DHO was appropriate. (*See id.* ¶ 18 B; Doc. 5-1 at 16, 8/31/10 DHO Report.) On August 17, 2010 at 9:30 a.m., the incident report was re-written and re-investigated to properly notify Bullard of the charges. (Doc. 5-1 at 5, Romano Decl., ¶ 6; Doc. 5-1 at 21, 8/17/11 Rewritten Incident Report; Doc. 5-1 at 16, DHO Report, § V.) The identification of the charges against Bullard on the re-

written incident report is the same as on the July 27 report, specifically, making sexual proposals or threats to another in violation of Code 206, and the re-written report again states that the charges are based on a review of the NICE Camera System and Bullard's self admission. (Doc. 5-1 at 21 ¶ 11.) The re-written incident report only differs from the original report in that it quotes verbatim the contents of the letter that Bullard submitted to the female staff member in which he compliments her, and in particular, her spirit, beauty, fragrance, walk, and body. (*Id.*; Doc. 5-1 at 25, Copy of letter.)

The re-written report was delivered to Bullard on August 17 at 12:59 p.m. (Doc. 5-1 at 21 ¶¶ 14-16.) A UDC hearing was held on August 26, 2010, and the re-written report contains the following summary of Bullard's comments at that hearing:

> I/M Bullard is sticking to the same story he mentioned to the UDC before the DHO sent the original one back for a rewrite. He is making a statement that he is a poet and has a habit of writing poems while incarcerated.

(*Id.* ¶ 17.) Following the UDC hearing on the re-written report, the UDC referred the incident report to the DHO for further hearing. (*Id.* ¶¶ 18 B, 19.)

On August 26, 2010 at 9:55 a.m., Bullard was notified of the UDC's action and was advised of his rights before the DHO. (*Id.* at 22 ¶ 21; Doc. 5-1 at 15, DHO Report, § I. C.) On August 31, 2010, DHO Garcia conducted a hearing on the charges against Bullard of making sexual proposals or threats to another. (Doc. 5-1 at 5,

Romano Decl., ¶ 6; Doc. 5-1 at 15-18, DHO Report.)  At the hearing, Bullard's due process rights were read and reviewed with him by the DHO, and Bullard indicated that he understood his rights, had no documentary evidence to present, and requested no witnesses.  (Doc. 5-1 at 16 § V.)  Bullard requested a staff representative, and Lieutenant Gonzalez appeared on his behalf.  (*Id.* at 15 § II. B.)  It also was noted that the incident report was re-written and re-investigated to properly notify Bullard of the charges, and that he received a second UDC hearing on August 26, 2010.  (*Id.* at 16 § V.)  It was further noted that the initial incident report was issued to Bullard on July 27, 2010 and that the initial UDC hearing was held on July 28, 2010.  (*Id.*)

In his statement at the hearing, Bullard indicated that he wanted to apologize because he never intended to compromise anyone's position.  (*Id.* § III. B.)  He explained that he writes poetry and had written the letter at issue in May, but felt that it applied to the female staff member in some ways, so he gave it to her.  (*Id.*)  He stated his position that his poem in no way could be construed as a sexual proposal or threat.  (*Id.*)

Upon consideration of the evidence, the DHO found that Bullard committed the prohibited act of Code 299, conduct which disrupts the orderly running of the institution, most like Code 206, making sexual proposals or threats to another.  (*Id.* at 16 § V.)  DHO Garcia explained that the decision was based upon the reporting

officer's statements, the review of the NICE Camera System, Bullard's handwritten letter, and Bullard's admission that he wrote and delivered the letter. (*Id.*) In accordance with the sanctions available for 200-level offenses, *see* 28 C.F.R. § 541.13, Table 3, Bullard was sanctioned with fifteen (15) days in disciplinary segregation; the loss of commissary and TRU LINKS privileges for 175 days; and the loss of twenty-seven (27) days of good conduct time. (*Id.* at 17 § VI.) DHO Garcia explained that these sanctions were imposed because there is zero tolerance for the type of communication that Bullard directed to staff as it undermines the authority of staff and demonstrates a disregard for rules and regulations. (*Id.* § VII.) It was further explained that this type of behavior disrupts the orderly running of the institution by impeding staff's ability to perform their assigned duties, and that if it continues uncorrected, it tends to encourage other inmates to participate in the same type of behavior. (*Id.*)

On September 8, 2010, Bullard was provided with a copy of the DHO Report, which contains a summary of the specific evidence relied upon by the DHO in reaching the finding of guilt and an advisement of his appeal rights. (*Id.* at 15-18.)

## II.   DISCUSSION

The BOP has a three-level Administrative Remedy Program that is available to

inmates for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined through the submission of a BP-9 form. *Id.* at § 542.14(a). If dissatisfied with the response, the inmate may appeal an adverse decision first to the Regional Office and then to the Central Office of the BOP. *Id.* at § 542.15(a). No administrative remedy appeal is considered to have been fully exhausted until it has been denied by the Central Office of the BOP. *Id.*

A review of records in this case reveals that Bullard has filed nineteen (19) administrative remedies, but procedurally defaulted on exhausting his claims regarding the disciplinary proceedings at issue. (Doc. 5-1 at 5, Romano Decl., ¶ 5; Doc. 5-1 at 11-13, Bullard's Administrative Remedy Generalized Retrieval.) On October 12, 2010, he filed Administrative Remedy Number 611265-R1 challenging the DHO hearing at issue in the instant case, but it was rejected on October 18, 2010 as untimely. (Doc. 5-1 at 11.) However, Bullard was instructed to re-submit his remedy with staff verification that the timely filing was not his fault. (*Id.*)

On October 27, 2010, Bullard appealed the October 18 decision. (*Id.* at 12.)

On November 4, 2010, his appeal was rejected because he had failed to provide staff verification as directed that his untimely filing was not his fault. (*Id.*) Bullard again was instructed to submit staff verification regarding the untimely filing of his administrative remedy. (*Id.*)

On December 1, 2010, Bullard appealed the rejection of his appeal to the BOP Central Office. (*Id.* at 13.) On January 3, 2011, the Central Office concurred with the Regional Director's rationale for rejecting his appeal as untimely filed. (*Id.*) Records reflect that Bullard made no further attempt to re-file his appeal. (*Id.* at 10-13.) He filed the instant Petition on December 13, 2010, while his Central Office appeal was pending. (Doc. 1.)

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust his administrative remedies before filing a petition for a writ of habeas corpus. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); *e.g.*, *Callwood v. Enos*, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial

resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted).

It is apparent from the record that Bullard failed to exhaust his administrative remedies before filing the instant Petition. However, he asserts that the exhaustion requirement should be excused or waived because he is not challenging the application of a BOP regulation, but instead is challenging the validity of the initial process. (*See* Doc. 6, Reply, at 1-2.) Therefore, he claims that the exhaustion requirement should be excused pursuant to *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235 (3d Cir. 2005).[2]

Bullard claims that the time frames authorized by "policy 28 CFR" were violated as to the incident report and procedures and the UDC hearing. (*See id.* at 3.) In particular, Bullard claims that, to satisfy due process requirements, the Warden is required to give written permission for an incident report to be re-written and for a UDC initial hearing date to be extended, and that the UDC and DHO must notify the inmate in writing of all changes in the proceeding. (*See id.* at 4.) Bullard claims that, in this instance, he never was given "fair notice" that the incident report was being re-

---

[2]In *Woodall*, The District Court excused Woodall's failure to exhaust his administrative remedies inasmuch as it was determined that exhaustion would be futile because, in challenging the limitation that BOP regulations imposed on the time an inmate could be placed in community confinement, Woodall was not challenging the application of the BOP regulations, but instead was challenging their validity. *Woodall*, 432 F.3d at 239 n.2.

written and alleges that, in violation of BOP regulations, the UDC failed to conduct a hearing on the re-written incident report within seventy-two (72) hours. (*See id.* at 4-5.) He claims that policy was created as the process went along without a change being implemented the Administrative Procedures Act ("APA"). (*See id.* at 5.)

Contrary to Bullard's assertion that he is not challenging the validity of BOP regulations, we find that, in arguing that he did not receive fair notice that the incident report was going to be re-written and that the UDC did not timely conduct a hearing on the re-written report, and that these occurrences were allegedly violations of BOP regulations, he is in fact challenging the application of BOP regulations during his disciplinary proceedings. He cannot claim to be challenging the validity of BOP regulations for the purpose of persuading this Court to excuse the exhaustion requirement, but then, upon obtaining review of his claims on the merits, argue that BOP regulations were not followed in his case. Therefore, to be consistent with decisions by other Members of this Court who have held that where a habeas petitioner challenges the specific application of a rule to his own situation, and not the rule's validity, exhaustion of administrative remedies is required and cannot be excused, we find that exhaustion was required in this case. *See, e.g., Johnson v. Scism*, Civil No. 3:11-CV-0047, 2011 WL 1258021, at *3 (M.D. Pa. Mar. 30, 2011) (Nealon, J.); *Hronek v. Angelini,* Civil No. 1:07-CV-1228, 2008 WL 717822, at * 3

Case 1:10-cv-02528-JEJ-SF   Document 10   Filed 05/18/11   Page 11 of 14

(M.D. Pa. Mar. 17, 2008) (Rambo, J.); *Perry v. Williamson,* Civil No. 3: 07-CV-0769, slip op. (M.D. Pa. Oct. 10, 2007) (Nealon, J.); *Narvaez v. Angelini,* Civil No. 4:07-CV-1227, slip op. (M.D. Pa. Sept. 5, 2007) (McClure, J.); *Ahmed v. Lindsay,* Civil No. 3:06-CV-1221, 2006 WL 3308667, at * 2 n. 3 (M.D. Pa. Oct. 11, 2006) (Kosik, J.).

We properly could end our discussion here and dismiss the instant Petition for failure to exhaust administrative remedies. However, having reviewed the record in this case, we find that, if we were to reach the merits of Bullard's Petition, we would have to deny it. The record establishes that Bullard was afforded each of the due process protections set forth in *Wolff v. McDonnell,* 418 U.S. 539, 567 (1974) that are required where an inmate faces the disallowance of good conduct time. Bullard claims that his right to due process was violated because he did not receive fair notice of the charges against him in that he did not receive notice that the incident report was going to be re-written. (*See* Doc. 6 at 5.) However, there is nothing in BOP Policy that prohibits the re-writing of an incident report or additional investigation or that requires the Warden to provide written authorization for the re-writing of a report as Bullard suggests. Moreover, the DHO directed the re-writing and re-investigation of the report to provide Bullard with sufficient notice of the charges against him. (*See* Doc. 5-1 at 21, 8/17/10 Rewritten Incident Report, ¶ 17; Doc. 5-1 at 16, DHO Report,

§ V.) We further observe that Bullard was not prejudiced by the re-written incident report because it contains the same charges as the original report and only differs from the original report in that it quotes verbatim the poem authored by Bullard that he delivered to the female staff member. (*See* Doc. 5-1 at 21 ¶ 11.)

The record also establishes that Bullard clearly received timely notice of the charges against him. In accordance with 28 C.F.R. § 541.15(a)[3], he received notice that he was being charged with making sexual proposals or threats to another in violation of Code 206 within twenty-four (24) hours of the issuance of the original incident report inasmuch as the report was written on July 27 at 4:00 p.m., and Bullard was served with a copy of the report on the same date at 5:15 p.m. (*See* Doc. 6 at 9, 7/27/10 Incident Report.) Although the charges remained the same on the re-written incident report, Bullard also received notice of the re-written report within twenty-four hours of its writing in that it was written on August 17, 2010 at 9:30 a.m., and delivered to him on the same date at 12:59 p.m. (*See* Doc. 5-1 at 21, Rewrite, ¶¶ 12, 14-16.)

Bullard also contends that his right to due process was violated because he did not receive a timely UDC hearing following the issuance of the re-written incident

---

[3] 28 C.F.R. § 541.15(a) provides that staff shall give notice to an inmate charged with violating a Bureau rule by providing a copy of the charges against him ordinarily within twenty-four (24) hours from the time that the staff becomes aware of the inmate's involvement in the incident.

report on August 17, 2010. (*See* Doc. 6 at 4-5.) Title 28 C.F.R. § 541.15(b) states that an inmate who is charged with violating a Bureau rule is entitled to a hearing before the UDC, and that the hearing ordinarily is held within three (3) work days from the time staff became aware of the inmate's involvement in the incident. That section further specifies that "the three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays." 28 C.F.R. § 541.15(b). Although Bullard's UDC hearing did not occur until Thursday, August 26, 2010, which was seven (7) work days after the issuance of the re-written report on Tuesday, August 17, 2010, the language in § 541.15(b) does not require a hearing within three (3) work days, but instead only provides that the hearing *ordinarily* will take place within that time frame. Moreover, as indicated in the August 31, 2010 DHO Report, the incident was re-investigated following the issuance of the re-written report, which would account for the slight delay in holding the UDC hearing. (*See* Doc. 5-1 at 16 § V.) Finally, we observe that, in compliance with 28 C.F.R. § 541.17(a), Bullard received more than the twenty-four (24) hours notice of the charges that is required before an inmate's appearance before the DHO in that he received the UDC report on August 26, 2010, and the DHO hearing was held on August 31, 2010. (*See* Doc. 5-1 at 15, DHO Report; Doc. 5-1 at 22, Re-Written Report, ¶ 21.)

**III. CONCLUSION**

Based on the foregoing, we find that Bullard's right to due process was not violated at any point during the disciplinary proceedings at issue, and therefore, we shall deny his Petition.  An appropriate Order will enter on today's date.